**TRIANGLE PUBLICATIONS, INC.,**
Appellant

v.

**FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,**
Springfield Television Broadcasting Cor-
poration, Intervenor.

**Nos. 15970, 15971.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 24, 1961.

Decided May 11, 1961.

Mr. Frederick Bernays Wiener, Wash-
ington, D. C., with whom Messrs. Morton
H. Wilner, Philip Bergson, and Gilbert
B. Lessenco, Washington, D. C., were
on the brief, for appellant.

Mrs. Ruth V. Reel, Counsel, Federal
Communications Commission, with
whom Messrs. John L. FitzGerald, Gen-
eral Counsel of the Federal Communica-
tions Commission at the time the brief
was filed, and Max D. Paglin, now Gen-
eral Counsel, Federal Communications
Commission, were on the brief, for ap-
pellee.

Mr. Seymour M. Chase, Washington,
D. C., for intervenor.

Before FAHY, DANAHER and BURGER,
Circuit Judges.

FAHY, Circuit Judge.

In No. 15971 the appeal is from a
decision and order of the Federal Com-
munications Commission denying the ap-

plication of appellant Triangle Publications, Inc., herein referred to as Triangle, for permission to move the transmitter location of its station WNHC–TV, New Haven, Connecticut, about 13 miles from its present site to a new one 19.8 miles from New Haven and 38.7 miles from Springfield, Massachusetts. This same decision and order granted the protest against such application filed by intervenor Springfield Television Broadcasting Corporation, herein referred to as Springfield, licensee of Springfield station WWLP.

No. 15970 involves a subsidiary phase of the same decision and order. It is an appeal from denial by the Commission of Triangle's request that the Commission take notice of the content of certain applications filed by Springfield. These applications seek the consent of the Commission to Springfield's proposed acquisition of an interest in station WHNB–TV, Hartford-New Britain, Connecticut, and in television station WWOR at Worcester, Massachusetts, and for authority to construct and operate various translator stations. It is the contention of Triangle that the material set forth in these several applications was relevant to the issues involved in the protest proceedings. We pass upon this contention in the main appeal, No. 15971, and dismiss appeal No. 15970.

■ We refer now to Triangle's suggestion that since its application for change of location of its transmitter meets the requirements of the Commission's rules governing signal intensity[1] and station separations,[2] the application should have been granted. It seems to us, however, as it seemed to the Commission, that an applicant who meets these or other minimal requirements does not thereby establish a right to have its application granted. Additional considerations may affect a determination as

to wherein lies the public interest; and here the differences between Triangle and the Commission arise.[3] The application was originally granted without a hearing, but Springfield's timely protest led the Commission to hold an evidentiary hearing, the original grant in the meantime being stayed.

A full hearing was held. On its basis the Commission's Broadcast Bureau submitted findings and conclusions in support of Triangle's application. Similarly, the examiner concluded that the Commission's grant of the application should be reinstated. After hearing oral argument, however, the Commission reversed the hearing examiner and denied the application, two Commissioners dissenting and one Commissioner not participating. Yet we think the decision of the majority adverse to Triangle must be sustained.

We recognize that the considerations advanced on behalf of Triangle by able counsel would no doubt have led to judicial approval of a Commission decision authorizing the change of location had such a decision been made. But the relevant factors do not unerringly point to only one Commission solution which could obtain judicial approval.

■ The Commission concluded that to grant the application would be inconsistent with its principles of television channel assignment. It gave considerable weight to the unusual nature of the geographic area affected, which includes in rather close proximity the populous cities of New Haven, Springfield, Hartford and New Britain. While the Commission said the move would not per se be inconsistent with its assignment principles it thought it would be of such a substantial distance "as to upset the delicate balance in the distribution of services that we have so carefully allocated for this area."[4] The Commission point-

1. 47 C.F.R. § 3.685(a) (1958).

2. 47 C.F.R. § 3.610 (1958).

3. The failure to grant the request notwithstanding Triangle's compliance with the rules did not make the case a rulemaking one. The Commission was not bound by previous decisions granting such application upon different facts. Those decisions did not amount to rulemaking.

4. Triangle Publications, Inc., 29 F.C.C. 315, 321 (1960).

ed out that such a move would have much greater repercussions than one in sparsely settled areas, and that it would place the transmitter so far from New Haven as to tend to convert the station into a Connecticut Valley station, whereas Triangle was actually a New Haven station. The change for the first time would place a Grade A signal of Triangle in the Springfield area, whereas the overall plan of the Commission for the area was that Triangle should remain a New Haven station. In the view of the Commission it followed that the grant would also result in a less fair, efficient and equitable distribution of services than was currently provided.

Involved in the foregoing analysis by the Commission was consideration of some factors favorable to Triangle in comparison with others deemed unfavorable. As Triangle points out the former include the circumstance that its contour lines would move overland northward into areas not previously reached and would recede from its wasted present coverage in the water areas to the south. Since, however, the change of location would be somewhat eastward as well as northward, the Commission found that Triangle's services would no longer be available to many persons in the New York metropolitan area to the west. In this connection Triangle points out that those persons would retain ample other services. The Commission, on the other hand, found that the net of it was that many more persons would lose service than would gain, and, more important, that the new areas covered brought Triangle into strong competition with existing UHF stations whose status would probably be seriously affected, contrary to the public interest.

In answer to the argument of Triangle that its application could not fairly be denied because of disadvantage to other stations, the Commission countered, we think correctly, that while private interests are not the standard by which to judge the matter, nevertheless where the public interest would be adversely affected by injury to private interests, then the Commission is entitled to consider whether the injury attributable to the new competition would adversely affect the public interest. It found such injury likely to occur in this instance because of the probable adverse effect upon existing UHF stations in the Springfield area whose services were of genuine value to the community, the curtailment of which would be a significant loss.[5]

Triangle urges as error, because not supported by the record, the conclusion of the Commission that Triangle's operations from its proposed new site would result in a net loss of service to some 903,000 persons.[6] It is said this figure nowhere appears in the record, which is true. The number of persons who would lose service was arrived at on the basis of exhibits in the record from which the Commission calculated the number and location of square miles from which service would be withdrawn, and the number and location of square miles where new service would be added. The approximate number who would lose service was then reached by using the United States Census Bureau Minor Civil Division maps showing the population for the areas. Triangle argues that it was error for the Commission to pursue this means of reaching a decision as to the number of persons who would lose service rather than requiring the protestant to adduce proof on the subject; but we perceive no reason why we should disregard the Commission's use of the information in the absence of any challenge to the accuracy of the method used.[7] In any event it is hardly ground

5. Id., at pages 323–324.

6. Related to this is the contention that the Commission ignored the fact that virtually all persons who would lose WNHC–TV's signal because of the move were already served by seven New York stations.

7. Triangle also contends that the Commission's computations considered only those persons who would lose service if

for setting aside the order of the Commission. Indeed Triangle's principal objection here is the omission of the Commission to consider the fact that those who would lose service in the greater New York area would have ample service remaining, see note 6 supra, whereas those who would gain by the change in the location of the transmitter would gain a needed additional service. We may well regard the failure of the Commission explicitly to weigh this matter as depriving its decision of some higher quality it might have achieved. It is the sort of omission which in some circumstances might be fatal to the validity of Commission action. We do not attach that effect to it in this case because the omission to consider this phase of the situation does not bear sufficiently upon the heart of the matter, which, as disclosed by the full discussion of the facts in the Commission's decision, was the desire of the Commission to maintain the "delicate balance in the distribution of services that we have so carefully allocated for this area."

■ ■ The procedural error charged to the Commission and made the subject of the separate appeal in No. 15970 is the failure of the Commission to grant Triangle's request for consideration of certain applications filed by Springfield which Triangle contends, with some merit, indicate that Springfield is in a stronger position than either the Commission or Springfield attributes to the latter in the protest proceedings. Fear of the injurious effect of the change of location on Springfield's competitive position is stressed as a reason for denial of Triangle's application. The request of Triangle that the Commission notice the contents in the applications referred to came after the record was closed and was denied as untimely and also because the data was deemed to be irrelevant. We should be reluctant to overrule the manner in which the Commission exer-

cised its discretion in viewing the request as untimely, but we think the Commission mistaken in saying the matter was irrelevant. It did bear on the strength of Springfield to face the new situation should the move of the transmitter location be permitted; but every error the court might find in a matter of this kind regarding the relevance of evidence is not to be used as a basis for setting aside an administrative decision made on such a full record as was here developed. The so-called "harmless error" rule applies to such a proceeding. Brown Telecasters, Inc. v. Federal Communications Comm., 110 U.S.App.D.C. ——, 289 F.2d 868. In other words, we think whatever relevance the data had is not sufficiently significant to upset the conclusion of the Commission, whether or not the request by Triangle that it be considered was timely.

Affirmed.

---

the relocation were allowed and that the calculation was inaccurate to the extent that it failed to take into consideration those who would gain service from the

move. The Commission, however, referred to the figure 903,000 as the "net loss." It does not appear that the figure is only an estimate of gross loss.