Patrick HENRY et al., d/b as Suburban Broadcasters, Appellants,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee.

No. 16526.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 17, 1962.

Decided March 29, 1962.

Mr. Robert L. Heald, Washington, D. C., with whom Messrs. Edward F. Kenehan and Henry R. Goldstein, Washington, D. C., were on the brief, for appellants.

Mr. Daniel R. Ohlbaum, Asst. Gen. Counsel, Federal Communications Commission, with whom Messrs. Max D. Paglin, Gen. Counsel, Federal Communications Commission, and Ernest O. Eisenberg, Counsel, Federal Communications Commission, were on the brief, for appellee. Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Before BAZELON, BASTIAN and BURGER, Circuit Judges.

BAZELON, Circuit Judge.

Appellants, doing business as Suburban Broadcasters, filed the sole application for a permit to construct the first commercial F.M. station in Elizabeth, New Jersey.[1] Although the Federal Communications Commission found Suburban legally, technically and financially qualified, it designated the application for hearing on the issues raised by the claim of Metropolitan Broadcasting Company, the licensee of WNEW in New York, that a grant would result in objectionable interference. At Metropolitan's request, the Commission subsequently added another issue for hearing:

> To determine whether the program proposals of Suburban Broadcasters are designed to and would be expected to serve the needs of the proposed service area.

Upon hearing, the trial examiner found for Suburban on both issues. The Commission affirmed on the issue of objectionable interference but reversed on the issue relating to the program proposals and denied the application. Suburban appeals.

These are the pertinent facts disclosed by the record. None of Suburban's principals were residents of Elizabeth. They made no inquiry into the characteristics or programming needs of that community and offered no evidence thereon. Suburban's program proposals were identical with those submitted in its application for an F.M. facility in Berwyn, Illinois, and in the application of two of its principals for an F.M. facility in Alameda, California.[2]

Although the trial examiner resolved the program planning issue in favor of Suburban, he noted that its approach might be characterized as "cavalier" or little more than a "quick shrug." He also referred to the "Program Policy Statement," released by the Commission July 29, 1960, to the effect that the broadcaster's programming responsibility is measured by the statutory standard of "public interest, convenience or necessi-

---

1. The Communications Act of 1934 § 319, 48 Stat. 1089, 47 U.S.C.A. § 319 (1958), forbids the Commission to license a station unless its construction has previously been authorized by a permit issued pursuant to §§ 308 and 309, 48 Stat. 1084–1085 (1934), 47 U.S.C.A. §§ 308, 309 (1958).

2. The application for the Berwyn facility was dismissed; the one for Alameda was granted.

ty," and that in meeting such standard the broadcaster is "obligated to make a positive, diligent and continuing effort, in good faith, to determine the tastes, needs and desires of the public in his community and to provide programming to meet those needs and interests." But the examiner stated that these standards were intended for existing licensees, rather than applicants for new stations, and were therefore inapplicable here.

In reversing the examiner, the Commission (with one Commissioner absent and two dissenting) stated:

We agree [with the examiner] that Elizabeth has a presumptive need for a first local FM transmission service. We have generally presumed that an applicant for such a community would satisfy its programming needs, assuming that the applicant had at least a rudimentary knowledge of such needs. However, we cannot indulge in that presumption where the validity of the underlying assumption is questioned, a specific issue is added, and it is demonstrated that the applicant has taken no steps to familiarize himself with the community or its needs. It is not sufficient that the applicant will bring a first transmission service to the community—it must in fact provide a first local outlet for community self-expression. Communities may differ, and so may their needs; an applicant has the responsibility of ascertaining his community's needs and of programming to meet those needs. As found by the Examiner, Suburban's principals made no inquiry into the character-istics of Elizabeth or its particular programming needs. The instant

program proposals were drawn up on the basis of the principals' apparent belief—unsubstantiated by inquiry, insofar as the record shows—that Elizabeth's needs duplicated those of Alameda, California, and Berwyn, Illinois, or, in the words of the Examiner, could "be served in the same manner that such 'needs' are served by FM broadcasters generally."

The Commission found that the "program proposals were not 'designed' to serve the needs of Elizabeth"; and that it could not determine whether the proposals "would be expected" to serve these needs, since no evidence of these needs was offered. "In essence," said the Commission, "we are asked to grant an application prepared by individuals totally without knowledge of the area they seek to serve. We feel the public deserves something more in the way of preparation for the responsibilities sought by applicant than was demonstrated on this record." Accordingly, the Commission held that "it cannot be concluded that a grant * * * would serve the public interest, convenience and necessity."

Appellants contend that the statutory licensing scheme requires a grant where, as here, it is established that the sole applicants for a frequency are legally, financially and technically qualified. This view reflects an arbitrarily narrow understanding of the statutory words "public convenience, interest, or necessity."[3] It leaves no room for Commission consideration of matters relating to programming. Moreover, appellants urge that consideration of such matters is precluded by the statute's proscription of censorship[4] and the constitutional guarantee of free speech.

3. Communications Act of 1934 § 307(a), 48 Stat. 1083, 47 U.S.C.A. § 307(a) (1958). The statute directs the Commission to grant a station license to any applicant "if public convenience, interest, or necessity will be served thereby."

4. "Nothing in this Act shall be understood or construed to give the Commission the power of censorship over the radio communications or signals transmitted by any radio station, and no regulation or condition shall be promulgated or fixed by the Commission which shall interfere with the right of free speech by means of radio communication." Communications Act of 1934 § 326, 48 Stat. 1091, 47 U.S.C.A. § 326 (1958).

We think these broad contentions are beside the narrow point at issue upon this record. It may be that a licensee must have freedom to broadcast light opera even if the community likes rock and roll music, although that question is not uncomplicated. Even more complicated is the question whether he may feed a diet of rock and roll music to a community which hungers for opera. These are questions, however, that we need not here decide. As we see it, the question presented on the instant record is simply whether the Commission may require that an applicant demonstrate an earnest interest in serving a local community by evidencing a familiarity with its particular needs and an effort to meet them.

We think National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943), settles the narrow question before us in the affirmative. There, the Commission promulgated regulations which provided, *inter alia*, that no license would be granted to stations whose network contracts would prevent them from developing programs "to serve the needs of the local community." 319 U.S. at 203, 63 S.Ct. at 1003. National Broadcasting Company challenged the regulations on precisely the grounds appellants advance here: that since the regulations were calculated to affect program content, they exceeded statutory and constitutional limitations. In sustaining the regulations, the Supreme Court held that the Commission may impose reasonable restrictions upon the grant of licenses to assure programming designed to meet the needs of the local community. We think it clear that the Commission's action in the instant case reflects no greater interference with a broadcaster's alleged right to choose its programs free from Commission control than the interference involved in National Broadcasting Co.[5]

Affirmed.

5. Appellants also complain that they were surprised by the Commission's insistence that they be familiar with the needs of the community they sought to serve. But that requirement is not new. See Kentucky Broadcasting Corp. v. Federal Communications Comm., 84 U.S.App.D.C. 383, 174 F.2d 38 (1949); Sanders, 2 F.C.C. 365, 372 (1936); Egeland, 6 F.C.C. 278 (1938); Brownsville Broadcasting Co., 2 F.C.C. 336, 340 (1936) (alternative ground); Martin, 3 F.C.C. 461 (1936) (alternative ground); Goldwasser, 4 F.C.C. 223 (1937) (alternative ground); Kraft, 4 F.C.C. 354 (1937) (alternative ground). And the question whether appellants had demonstrated such familiarity was within the scope of the issues designated for hearing.