464 F.2d 812
 150 U.S.App.D.C. 303
 WCOV, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Central Alabama Broadcasters, Inc., and Selma Television
Incorporated, Intervenors, Intervenors.
MONTGOMERY INDEPENDENT TELECASTERS, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Central Alabama Broadcasters, Inc., and Selma Television
Incorporated, Intervenors.
 Nos. 71-1472, 71-1477.
 United States Court of Appeals,
 District of Columbia Circuit.
 Argued May 24, 1972.
Decided June 22, 1972.
 
 Mr. Arthur V. Weinberg, Washington, D. C., with whom Mr. Vincent A. Pepper, Washington, D. C., was on the brief, for appellant in No. 71-1472.
 Mr. Charles M. Firestone, Counsel, F. C. C., with whom Messrs. John W. Pettit, Gen. Counsel, and Joseph A. Marino, Associate Gen. Counsel, F. C. C., were on the brief, for appellee. Mr. Richard E. Wiley, Gen. Counsel, F. C. C., at the time the record was filed, and Mr. John H. Conlin, Associate Gen. Counsel, F. C. C., at the time the record was filed, also entered appearances for appellee.
 Mr. Howard Jay Braun, Washington, D. C., with whom Messrs. Jack P. Blume and Eugene F. Mullin, Washington, D. C., were on the brief, for intervenors. Mr. J. Parker Connor, Washington, D. C., also entered an appearance for intervenor Selma Television Inc.
 Mr. Izas Bahakel, Birminghan, Ala., entered an appearance for appellant in No. 71-1477.
 Before BAZELON, Chief Judge, WRIGHT, Circuit Judge, and CHARLES E. WYZANSKI, Jr.,* Senior United States District Judge for the District of Massachusetts.
 J. SKELLY WRIGHT, Circuit Judge:
 
 
 1
 Appellant WCOV, Inc., the licensee of UHF Television Station WCOV in Montgomery, Alabama, seeks to prevent VHF Station WSLA, located in Selma, Alabama, from expanding its effective radiated power. The Federal Communications Commission approved WSLA's proposed expansion and denied appellant's request for reconsideration without a hearing. Finding no error in the Commission's procedures and no abuse of discretion in its decision, we affirm.
 
 
 2
 * WSLA began operation as Selma's only television station in 1960 at an effective radiated power of 2.51 kw, one of the lowest in the country. The station consistently lost large amounts of money until 1968 when a fire destroyed its facilities and silenced its broadcasts altogether. On August 13, 1970, in an effort to get the station back on the air, the licensee, Selma Television Incorporated (STI), filed an application with the Commission to transfer the station to Central Alabama Broadcasters, Inc. (Central). This application was followed, about a week later, by a second application requesting a tenfold increase in effective radiated power. It was made clear to the Commission that the two applications were mutually contingent-that is that Central would not be interested in purchasing WSLA unless the station's power was increased and that STI was not interested in resuming broadcasting at increased power unless the sale to Central was approved. No petitions to deny or informal objections were filed, and the Commission approved the assignment application and the modification of facilities application simultaneously several months later.
 
 
 3
 Thereupon, WCOV filed with the Commission a petition for reconsideration. Although it did not oppose the grant of the assignment application, WCOV argued that enlargement of WSLA's Grade B contour would endanger WCOV's competitive position and therefore have an adverse UHF impact. Cf. In re Application of KTIV Television Co., 2 Pike & Fischer RR2d 95 (1964). Moreover, WCOV contended that Central's surveys of the programming needs of its gain area were inadequate. Finally, WCOV argued that it had the "good reason" required by Section 1.106(b)[1] of the Commission's rules for not filing a pre-grant petition to deny. Specifically, WCOV argued that it was unfairly surprised when the Commission granted the assignment and modification applications together and that it had planned to oppose the modification application when and if the assignment application-which it did not oppose-was granted.
 
 
 4
 In a careful and detailed opinion, the Commission rejected each of these contentions. It found WCOV's excuse for failure to file a petition to deny unpersuasive, and therefore held that WCOV would be held to a "higher standard" before reconsideration would be granted. Moreover, the Commission found that even under the normal standard WCOV had failed to allege sufficient facts to require a hearing. It found the adverse UHF impact to be de minimis and easily outweighed by the need to provide television service to the Selma market. Similarly, it held that Central's gain area survey, as supplemented after the petition for reconsideration was filed, to be in accord with the Commission's rules.
 
 
 5
 Having failed to persuade the Commission, WCOV now renews its arguments in this court. For the reasons given below, we find appellant's contentions equally unpersuasive.
 
 II
 
 6
 Strictly speaking, it is unnecessary for us to review the Commission's decision to hold WCOV to a higher standard since a careful reading of the Commission's opinion makes clear that it would have rejected WCOV's petition even under the usual pre-grant test. Nonetheless, we note in passing that the Commission's insistence on a higher standard in this situation is neither unreasonable nor unprecedented. As this court stated in Valley Telecasting Co. v. FCC, 118 U.S.App.D.C. 410, 336 F.2d 914 (1964), post-grant pleadings should not be granted unless they "clearly point to an injury to the public sufficient to outweigh considerations of administrative orderliness," 118 U.S.App.D.C. at 413, 336 F.2d at 917, or "clearly require a hearing to avoid the possibility of a serious injury to the public." 118 U.S.App.D.C. at 415, 336 F.2d at 919.
 
 
 7
 The Commission has frequently ruled on two mutually contingent applications together,[2] and we see nothing inherently arbitrary about this procedure. On the contrary, it seems to us to be an eminently sensible device for avoiding wasted effort and moot decisions. The FCC rules make no provision for an extension of time to file a petition to deny when one application is dependent upon another,[3] and WCOV points to no past Commission decisions which could have misled it. We need hardly elaborate on the importance to the agency of having the arguments against an application before it at the time the initial decision is made.[4] If WCOV was really confused about the proper timing of its petition to deny, it could have requested clarification from the Commission before the initial decision. Instead, appellant chose to sleep on its rights and, having done so, it should not be heard to complain about the consequences of its negligence.
 
 III
 
 8
 We share the Commission's view that, whatever standard is used to judge WCOV's petition, it fails to make sufficient factual allegations to require a hearing. Cf. WLVA, Inc. Lynchburg, Virginia v. FCC, 148 U.S.App.D.C. 262, 459 F.2d 1286 (1972). WCOV relies heavily on the adverse UHF impact which expansion of WSLA's Grade B contour would allegedly cause. However, in recent years the Commission has indicated that the need to avoid adverse UHF impact is no longer as pressing as it has been in the past. Although UHF impact will apparently still be considered, it will now be given somewhat less weight when balanced against important competing Commission policies.[5] The UHF impact doctrine is, of course, a creation of the Commission and the Commission is free to give it such weight as it chooses, provided it is not arbitrary or irrational. See WLVA, Inc., Lynchburg, Virginia v. FCC, supra, 148 U.S.App.D.C. at 279, 459 F.2d at 1303.
 
 
 9
 It is hardly arbitrary or irrational to hold, as the Commission did here, that any adverse UHF impact is easily outweighed by the need to provide the Selma market with television service-a goal which the Commission has been pursuing since 1954. Even with the tenfold increase in its effective radiated power, WSLA will still be one of the weakest stations in the country-weaker by far, incidentally, than WCOV. The Commission reasonably found that it was simply not possible to get WSLA back on the air without this modest increase, and that the increase would inevitably cause some further overlap with WCOV's market. We cannot say that the Commission exceeded its mandate by subordinating UHF impact to the need to provide city-grade service to Selma.
 
 
 10
 Moreover, we are particularly reluctant to upset the balance struck by the Commission in light of the de minimis nature of the adverse UHF impact alleged by WCOV. Granting WSLA's modification application will cause a scant three per cent increase in its Grade B contour overlap with WCOV. Even with the increased power, WSLA's signal will not approach Montgomery, which is WCOV's primary market. The adverse UHF impact should be further reduced by the fact that WSLA and WCOV enjoy different network affiliations. Although WCOV has lost money every year since it began operations, these losses have been steadily declining, and the station is now apparently in a fairly stable financial condition. In light of all these facts, we share the Commission's view that the adverse UHF impact caused by WSLA's increase in power is unlikely to be substantial.
 
 IV
 
 11
 WCOV argues that Central's pre-grant survey was inadequate and that the Commission erred in allowing Central to supplement the survey after WCOV filed its petition for reconsideration. However, as the Commission pointed out, if WCOV had filed a petition to deny, Central would have been permitted to amend its application at the pre-grant stage. Having remained silent until after the modification application was approved, WCOV can hardly object to the fact that Central responded to its arguments at the post-grant stage.
 
 
 12
 When Central's initial survey is viewed together with its supplementation, we cannot say that the Commission erred in finding it adequate. Indeed, it is interesting that Central's survey is a good deal more extensive than the survey submitted by WCOV itself when WCOV was interested in buying the station. We also note that Central has undertaken to serve primarily Selma and Dallas Counties, which are not within WSLA's gain area. Inasmuch as the Commission has previously held that population surveys need be less extensive for areas outside the primary service area, see In re Application of Liberty Television, 26 FCC2d 760, 763 (1970); In re Application of Eagle Broadcasting Co., 20 FCC2d 233, 236 (1969), Central's gain area survey need only show that its programming will be generally responsive to the community's needs. And since WCOV purports not to oppose WSLA's return to the air at its previously authorized power, it can only be heard to complain about the adequacy of the survey in the gain area. When our examination of the survey is so restricted, we cannot say that the Commission erred in holding it to be adequate.
 
 
 13
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d) (1970)
 
 
 [1]
 47 C.F.R. Sec. 1.106(b) (1972), which provides in pertinent part: "* * * If the petition [for reconsideration] is filed by a person who is not a party to the proceeding, it shall * * * show good reason why it was not possible for him to participate in the earlier stages of the proceeding."
 
 
 [2]
 For example, the Commission frequently rules simultaneously on applications to modify the facilities of unconstructed stations and applications for extensions of time to construct the stations. See In re Application of Selma Television, Inc., 29 FCC2d 522, 525 n. 6 (1971)
 
 
 [3]
 Neither the statute nor the Commission's regulations provide an exception to the 30-day time limit on filing petitions to deny. See 47 U.S.C. Sec. 309(d) (1) (1970); 47 C.F.R. Sec. 1.580(i) (1972). Cf. 47 C.F.R. Sec. 1.587 (1972)
 
 
 [4]
 Indeed, Congress found it necessary to impose the 30-day time limit on petitions to deny in order to stop "serious and disruptive procedural abuses." See H.R.Rep.No.1800, 86th Cong., 2d Sess., 11 (1960). See also S.Rep.No.690, 86th Cong., 1st Sess., 2 (1959)
 
 
 [5]
 As we recently had occasion to point out, the UHF impact policy "has lost some measure of its urgency and is not to be looked upon as an inflexible across-the-board barrier to VHF assignment." Plains Television Corp. v. FCC, 142 U.S.App.D.C. 248, 250, 440 F.2d 276, 278 (1971)