Kenneth J. CROSTHWAIT, Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

F. L. Crowder, trading as Harriman Broadcasting Company, Intervenor.

No. 76–1196.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1978.

Decided Aug. 29, 1978.

---

16. 5 U.S.C. §§ 556–557 (1976).

William M. Barnard, Washington, D. C., for appellant. John B. Kenkel, Washington, D. C., also entered an appearance for appellant.

Thomas R. King, Jr., Counsel, F. C. C., Washington, D. C., with whom Werner K. Hartenberger, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, F. C. C., Washington, D. C., were on the brief, for appellee. Ashton R. Hardy and Sheldon M. Guttmann, Counsel, F. C. C., Washington, D. C., also entered appearances for appellee.

Forbes W. Blair and G. Daniel McCarthy, Washington, D. C., were on the brief, for intervenor.

Before WRIGHT, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges.

Opinion for the Court Per Curiam.

PER CURIAM:

Folkways Broadcasting Company appeals from orders of the Federal Communications Commission denying a construction permit,[1] refusing to rehear that decision,[2] and declining after inception of this appeal to seek a remand to enable administrative reconsideration.[3] Though, on the record then before the Commission, we do not fault its ruling on the permit application, we find that its action has been eroded by events occurring during pendency of the appeal. We accordingly vacate the orders under review and remand the case to the Commission for further proceedings, in light of Commission precedent, with respect to Folkways' post-decisional efforts to amend its application.

## I. BACKGROUND

In 1970, the Commission designated for hearing the mutually exclusive applications of Folkways and F. L. Crowder for a permit authorizing construction of a broadcast facility to provide the first FM radio service in Harriman, Tennessee. Further proceedings were held in abeyance, however, until release of the Commission's *Primer on Ascertainment*[4] in February 1971. Those with pending applications were then afforded 90 days within which to amend their ascertainment showings to comport with *Primer* standards, which Folkways endeavored to do. After a hearing, the Commission's Review Board declined to award the permit to Folkways because its ascertainment effort was unacceptable,[5] or to Crowder because of (a) misrepresentation to the Commission, (b) earlier trafficking in broadcast licenses and (c) ascertainment defects.[6]

---

1. *Folkways Broadcasting Co.,* 48 F.C.C.2d 723 (Rev.Bd.1974).

2. *Folkways Broadcasting Co.,* 57 F.C.C.2d 609 (1976).

3. · *Folkways Broadcasting Co.,* 61 F.C.C.2d 912 (1976). After this appeal was filed, Kenneth J. Crosthwait, the original 100% shareholder in Folkways, sold his stock to a third party but retained all interest in the FM application. Crosthwait then asked that we substitute him for Folkways as the appellant herein. We remanded the record to the Commission "to allow Crosthwait an opportunity to seek an amendment to the application to reflect his status." *Folkways Broadcasting Co. v. FCC,* No. 76–1196 (D.C. Cir. Oct. 27, 1977). The Commission permitted Crosthwait's substitution as the real applicant for the permit, *Folkways Broadcasting Co.,* No. 18912 (F.C.C. Jan. 12, 1978), and, after the record was returned to us, we granted Crosthwait's motion to substitute parties, *Folksways Broadcasting Co. v.*

FCC, No. 76–1196 (D.C. Cir. Mar. 14, 1978). Because all events relevant to this appeal occurred while Folkways was actually the applicant for the permit, we continue to refer to Folkways in lieu of Crosthwait.

4. *Primer on Ascertainment of Community Problems by Broadcast Applicants,* 27 F.C.C.2d 650 (1971), hereinafter cited as *Primer.*

5. See generally *Suburban Broadcasters,* 30 F.C.C.2d 1021 (1961), *aff'd sub nom. Henry v. FCC,* 112 U.S.App.D.C. 257, 302 F.2d 191, *cert. denied,* 371 U.S. 821, 83 S.Ct. 37, 9 L.Ed.2d 60 (1962).

6. *Folkways Broadcasting Co., supra* note 1. See also *Crowder v. FCC,* 130 U.S.App.D.C. 198, 399 F.2d 569 (1968) (sustaining Commission's disqualification of Crowder, on character grounds, for AM license).

Folkways' petition for review by the Commission was rejected without specification of reasons.[7] On the same day, however, the Commission issued its decision in *Eastern Broadcasting Company*[8] granting reconsideration of a denial, which had been predicated on ascertainment grounds, of an application for a construction permit for a new FM radio station in Harlan, Kentucky. Relying on *Eastern,* Folkways sought reconsideration and leave to amend its application. This request was refused,[9] essentially for fear of prejudicing potential *Ashbacker* rights [10] of Crowder, who meanwhile had effected an appeal to this court. While Folkways' ensuing appeal to us was pending Crowder withdrew his own, whereupon Folkways unsuccessfully implored the Commission to seek a remand in view of the lapse of Crowder's cognizable interest in a prospective hearing.[11] That order and the two preceding [12] now lie before us for review.

## II. FOLKWAYS' INITIAL DISQUALIFICATION

We address initially Folkways' challenge to the Review Board's disapproval of its original ascertainment showing. The Board deemed the first of three asserted defects sufficiently severe to "render[ ] [Folkways'] survey fatally defective." [13] We sustain that ground, and thus need not consider the other deficiencies questioned.

The critical shortcoming was Folkways' failure to assign principals, management-level employees or prospective manage-

ment-level employees to conduct each of its interviews with community leaders.[14] Eleven of the 48 interviews were handled by two individuals employed at Folkways' AM station. The Review Board pointed out that Folkways had not demonstrated any "specific instances where either individual ha[d] participated in programming decisions," [15] and that Folkways' president and principal stockholder, Kenneth J. Crosthwait, had testified that neither played any part in assembling the program proposal included in Folkways FM application.[16] Folkways challenges the Commission's insistence that interviewers have a role in decisionmaking as inconsistent with the *Primer* standard and not reasonably foreseeable.

■ We think the Review Board's construction of the *Primer* was substantively reasonable. The *Primer* report explains that the Commission requires as the applicant's representatives in community-leader interviews "those whose position is high enough in the organization to be an effective voice in the decisionmaking process." [17] Through consultation of "the principals and the management of an applicant . . . with community leaders" it is hoped "that a dialogue [can] be established and maintained between the community and the decision-making personnel of the applicant." [18] Thus, a filtering of community input through lower-level station advisors is the very technique the *Primer* was intended to short-circuit.[19] The *Primer's* reference to a

7. *Folkways Broadcasting Co.,* F.C.C. No. 75–1017 (Sept. 9, 1975), Joint Appendix (J.App.) 40.

8. 55 F.C.C.2d 276 (1975).

9. *Folkways Broadcasting Co., supra* note 2.

10. See *Ashbacker Radio Corp. v. FCC,* 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).

11. *Folkways Broadcasting Co., supra* note 3.

12. See notes 1–2 *supra* and accompanying text.

13. *Folkways Broadcasting Co., supra* note 1, 48 F.C.C.2d at 725.

14. See *Primer, supra* note 4, 27 F.C.C.2d at 683 (Question & Answer 11).

15. *Folkways Broadcasting Co., supra* note 1, 48 F.C.C.2d at 725.

16. *Id.*

17. *Primer, supra* note 4, 27 F.C.C.2d at 664.

18. *Id.* at 663–664.

19. *Id.* at 664 ("[i]f nondecisionmaking personnel . . . were used, the information that would be gathered would go through a filtering process that might exclude much valuable information").

"voice" in the decisionmaking process [20]—on which Folkways places much emphasis—does not compel a contrary conclusion. The operative phrase is "*effective* voice," which is fully consonant with the Review Board's interpretation that those who undertake ascertainment contacts on the applicant's behalf have authority to collaborate in decisionmaking in some forceful way.

■ We think, too, that Folkways was fairly apprised of the governing standard. The Commission's report illuminating the *Primer* guidelines contained numerous references to "decisionmaking" authority.[21] Moreover, the Review Board's reading is in harmony with, if indeed it is not dictated by, the express purpose of the pertinent *Primer* provisions.[22] These factors coalesce to render the standards "reasonably comprehensible" to an applicant "acting in good faith,"[23] and no more is required.

■ The Review Board's holding that Folkways had not met the requirement at issue enjoys substantial record support. Though testimony indicates that the two Folkways employees who conducted eleven of the interviews have in the past participated in pre-decision discussions concerning Folkways' AM station with Folkways' president—who reserved the final say—Folkways has pointed to no evidence tending to show that their role was more than merely advisory. As Folkways' president testified and the Review Board found, neither shared in the decisions leading to formulation of the programming proposed for the facility applied for.[24] These two employees thus completely lacked the "effective voice" in program decisions demanded of those who conduct ascertainment interviews for the applicant.

## III.   RECONSIDERATION AND REMAND

We find, however, that the Commission's denial of Folkways' petition for review has been seriously undercut by subsequent developments, and that a remand is necessary. Folkways attempted to obtain reconsideration by likening its case to *Eastern,*[25] in which the Commission accepted a post-decision ascertainment amendment on equitable grounds. Specifically, the applicant in *Eastern* had undergone lengthy administrative proceedings and, if successful, would have provided the second radio outlet in Harlan, Kentucky.[26] Folkways contended that it had been in a hearing status over two years longer than Eastern, that the defects found in its survey were less egregious than Eastern's and that it proposed to initiate the first night-time and first FM station in Harriman, Tennessee.

Without addressing these circumstances, the Commission regarded Folkways' reliance on *Eastern* as misplaced for two principal reasons. The first was that the Commission had denied Folkways an administrative review without specifying reasons and that its procedural rules precluded reconsideration in such circumstances.[27] The

**20.** *Id.*

**21.** See *id.* at 664–666.

**22.** See notes 18–19 *supra* and accompanying text.

**23.** *Bamford v. FCC,* 175 U.S.App.D.C. 250, 254, 535 F.2d 78, 82, *cert. denied,* 429 U.S. 895, 97 S.Ct. 255, 50 L.Ed.2d 178 (1976), quoting *Radio Athens, Inc. v. FCC,* 130 U.S.App.D.C. 333, 339, 401 F.2d 398, 404 (1968).

**24.** See text *supra* at notes 15–16. In light of that, and considering testimony by Folkways' president concerning the decisionmaking capacity of individuals to be carried over from Folkways' AM station or hired anew for the FM station, J.App. 206, the Commission was justified in declining to rely on the prospective position-titles bestowed on interviewing personnel.

**25.** See text at note 8 *supra.*

**26.** See *Eastern Broadcasting Co., supra* note 8, 55 F.C.C.2d at 277.

**27.** See 47 C.F.R. § 1.106(b) (1977) ("[e]xcept where the Commission has denied an application for review without specifying reasons therefor, any party to the proceeding  .   .   . may file a petition requesting reconsideration of the action taken"); *id.* § 1.115(g) ("[n]o petition requesting reconsideration of an order which denies an application for review without specifying reasons therefor will be entertained").

second was that acceptance of Folkways' post-decision amendment would prejudice Crowder's potential *Ashbacker* rights to a full comparative hearing in the event that he prevailed on his appeal.

■ We think the Commission improperly invoked its procedural regulations as a basis for declining reconsideration. In *Eagle Broadcasting Company*,[28] we observed that "[r]eliance by the Commission on its own rule against reconsideration would in itself be a clearly inadequate reason for the refusal to rehear."[29] We acknowledged no more than that "[t]he rule may have some justification where the summary denial of review reflects a Commission judgment that the appeal was frivolous, and where the request for rehearing is only a rehash of the same, frivolous arguments."[30]

Here, Folkways proffered an amended ascertainment survey, not "a rehash of the same, frivolous arguments" adduced when Commission review was first sought. To be sure, the Commission nonetheless could properly have snubbed a "belated attempt to repair [a] defective showing made at the hearing,"[31] not involving newly discovered evidence[32] nor otherwise attended by good cause.[33] But the only consideration the Commission seemingly advanced as a detraction from good cause to grant Folkways' petition for reconsideration was possible prejudice to Crowder's *Ashbacker* rights[34]—the Commission's second ground for denying reconsideration. Thus the procedural rules bear no independent significance in the circumstances of this case.

■ We have difficulty, too, with the Commission's second decisional ground. Potential prejudice to a mutually exclusive applicant does not in the Commission's view warrant foreclosure of amendments—intended to prevent disqualification—*during* a hearing. The Commission has ruled that an applicant has no "vested interest in the disqualification of a competing applicant . . . [s]ince the public interest is best served by having as many qualified applicants as possible competing for each broadcast facility. . . ."[35] The same justification would seem to apply with equal force to post-decisional motions to amend. In any event, the Commission could have protected Crowder adequately, while enabling Folkways' beneficial participation, by accepting Folkways' amendment and deferring consideration of comparative issues[36] —or indeed of all matters—until resolution of Crowder's appeal. The Commission has asserted no procedural interest that might legitimately have foreclosed that course.

■ Even assuming that the Commission acted properly to ensure fair consideration of Crowder's competing application were he to succeed on his appeal, that ground for declining Folkways' request for reconsideration was totally removed by Crowder's withdrawal of the appeal, and the case thus seems ripe for remand to the Commission. As we declared in *Greater Boston Television Corporation*,[37]

[t]his court's decisions in various cases . . . reflect a doctrine favoring remand, in the interest of a just result,

---

28. 169 U.S.App.D.C. 16, 514 F.2d 852 (1975).

29. *Id.* at 19, 514 F.2d at 855.

30. *Id.*

31. *Folkways Broadcasting Co., supra* note 2, 57 F.C.C.2d at 611; see *Bamford v. FCC, supra* note 23, 175 U.S.App.D.C. at 258, 535 F.2d at 86.

32. See 47 C.F.R. § 1.106(c) (1977).

33. See *id.* § 1.106(c)(3); *cf.* 47 C.F.R. § 1.522(b) (1977); *Eastern Broadcasting Co., supra* note 8; *Erwin O'Conner Broadcasting Co.,* 22 F.C.C.2d 140 (1970).

34. See text *supra* at notes 25–28.

35. *Azalea Corp.,* 31 F.C.C.2d 561, 563 (1971).

36. *Cf. id.* at 561 (ascertainment amendments accepted and considered in deciding disqualification issue but given no weight in considering comparative ascertainment efforts and programming differences of the competing applicants).

37. *Greater Boston Television Corp. v. FCC,* 149 U.S.App.D.C. 322, 463 F.2d 268 (1971), *cert. denied sub nom., WHDH, Inc. v. FCC,* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972).

where there has been a change in circumstances, subsequent to administrative decision and prior to court decision, that is not merely "material" but rises to the level of a change in "core" circumstances, the kind of change that goes to the very heart of the case.[38]

It cannot be gainsaid that dismissal of Crowder's appeal was "a change in 'core' circumstances" underlying the Commission's refusal to reconsider. We have pointed out the Commission's error in relying upon its procedural rules as an independent basis for withholding review.[39] And the Commission failed to reach Folkways' argument that the equitable grounds favoring reconsideration of its case are stronger than those in *Eastern*.[40] This is not the first time we have had to remind the Commission of the "principle that agency action cannot stand when it is 'so inconsistent with its precedents as to constitute arbitrary treatment amounting to an abuse of discretion.'"[41] Though Commission counsel has undertaken to deal with the problem on appeal, we cannot rely on "*post hoc* rationalizations by counsel as the prime authority for the Commission decision."[42]

■ When the Commission was asked to seek a remand from this court, however, it insisted that the exigencies of administrative finality militated against that course, noting that it had been "four . . years [since] the close of the record and issuance of the Initial Decision and one year after we denied Folkways' application for review."[43] Again we are unpersuaded by the Commission's reasoning. In *Greater*

*Boston*[44] we carefully distinguished a "'final' administrative order—. . . . an order which is no longer subject to appeal to the court, for which no administrative reconsideration is permitted by the regulatory statute"—from an order still under judicial review.[45] With respect to the former, we said that "[t]he general interest of repose gains dominance,"[46] but we admonished that "prior to the effective date of a final administrative order, the interests of administrative flexibility, and securing of the right result in the particular case, have relative dominance—and they permit appellate direction for reopening of proceedings, in appropriate cases"[47] even though the Commission opposes remand on finality grounds.[48] Here we deal with a clearly nonfinal order, and Folkways has invoked Commission precedent to buttress the claim that equitable considerations demand acceptance of its amendment in the public interest. The sole ground possessing even colorable merit on which the Commission relied to distinguish that precedent has been eradicated by changed circumstances.[49] We conclude that the policy of finality does not justify a refusal to confront squarely Folkways' assertion that acceptance of its amendment would advance the public good.

■ Moreover, we find the Commission's argument somewhat disingenuous. It attributes to Folkways delay resulting from unhurried issuance of its own decisions.

38. *Id.* at 337, 463 F.2d at 283.

39. See text *supra* at notes 28–34.

40. See text *supra* at notes 25–27.

41. *Garrett v. FCC,* 168 U.S.App.D.C. 266, 270, 513 F.2d 1056, 1060 (1975), quoting *Herbert Harvey, Inc. v. NLRB,* 137 U.S.App.D.C. 282, 292, 424 F.2d 770, 780 (1969).

42. *Hawaiian Tel. Co. v. FCC,* 162 U.S.App.D.C. 229, 236–237, 498 F.2d 771, 777–778 (1974); see *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962); *West Mich. Telecasters, Inc. v. FCC,* 130 U.S.App.D.C. 39, 42, 396 F.2d 688, 691 (1968).

43. *Folkways Broadcasting Co., supra* note 2, 57 F.C.C.2d at 611.

44. *Supra* note 37.

45. *Greater Boston Television Corp. v. FCC, supra* note 37, 149 U.S.App.D.C. at 336, 463 F.2d at 282.

46. *Id.*

47. *Id.*

48. *Id.* at 338, 463 F.2d at 284.

49. See text *supra* at notes 35–38.

The Commission's position contrasts sharply, too, with its view in *Eastern,* where the fact that the applicant had undergone lengthy administrative proceedings was deemed an element equitably favoring reconsideration.[50] To boot, the Commission has not articulated how the passage of time from its denial of Folkways' petition for reconsideration has made reassessment of Folkways' supporting equitable arguments inappropriate. Only finality as an abstract principle is advanced, and that, as we have indicated, has little weight during pendency of an appeal from the Commission's orders.[51]

We conclude, then, that reexamination by the Commission of the applicability of its *Eastern* decision to Folkways' situation is fully merited. We cannot anticipate what result might be reached on grounds thus far unasserted. We simply hold that the issue is meet for Commission consideration. To that end, we vacate the orders appealed from and remand the case to the Commission for further proceedings.[52]

*So ordered.*

**50.** *Eastern Broadcasting Co., supra* note 8, 55 F.C.C.2d at 277.

**51.** See text *supra* at notes 44–48.

**52.** It is necessary to vacate not only the order declining reconsideration but the other two orders appealed from as well. While the Commission's denial of the permit to Folkways was amply supported by the then-existent record, see Part II *supra,* it is evident that the situation could be altered radically by reexamination in light of *Eastern* —a matter upon which we intimate no view. And since we ourselves direct a remand to the Commission for that purpose, the appeal from the Commission's own refusal to request remand is now moot.