**MULTI–STATE COMMUNICATIONS, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**RKO General, Inc., Intervenor.**

No. 77–1440.

United States Court of Appeals, District of Columbia Circuit.

Argued June 20, 1978.

Decided Oct. 4, 1978.

Rehearing Denied Nov. 30, 1978.

Certiorari Denied March 19, 1979. See 99 S.Ct. 1501.

Joseph M. Morrissey, Washington, D. C., for appellant.

Thomas R. King, Jr., Counsel, F. C. C., Washington, D. C., with whom Robert R. Bruce, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, Washington, D. C., were on the brief, for appellee.

Harold David Cohen, J. Laurent Scharff and Jack N. Goodman, Washington, D. C., were on the brief, for intervenor.

Before BAZELON, Circuit Judge, TUTTLE,* United States Senior Circuit Judge for the Fifth Circuit, and McGOWAN, Circuit Judge.

Opinion for the Court filed by TUTTLE, Senior Circuit Judge.

Dissenting opinion filed by BAZELON, Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from an order of the Federal Communications Commission (FCC) denying the application of the petitioner, Multi-State Communications, Inc., to construct a commercial broadcast television station in New York City. The Commission found that the petitioner was not financially qualified, as required by § 308(b) of the Communications Act (47 U.S.C. § 308(b)), because it had not presented reasonable assurance that a $4 million bank loan would be available to finance construction and operation of the station.

Multi-State filed its application with the FCC on May 1, 1972. Accompanying this application was a Chase Manhattan Bank letter signed by Kaye H. Jones, a vice president of the bank. The letter was intended

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

by Multi-State to demonstrate that it fulfilled FCC requirements of financial qualification, namely that it had funds available to construct the station and to operate it for three months without relying on revenue.[1] The bank letter stated in its entirety:

We are willing to lend you up to $4,000,000 provided the following conditions are met:

(1) You are successful in obtaining approval from the Federal Communications Commission to construct and operate a television broadcast station on VHF Channel 9 in New York City; and,

(2) All reasonable and ordinary credit criteria of the Chase Manhattan Bank are met at such time as you (a) have received the license to operate said station; and (b) request from the Chase Manhattan Bank a formal lending commitment.

While the pricing and terms of amortization of any loan commitment will of course be contingent upon the exact credit conditions prevailing at the time of such commitment, we contemplate calculating interest on any loan made at the rate of 2% above the prime rate of this bank at the time of each advance (for information, the prime rate of this bank is presently 5%); and, any loan made will be repaid, after a one year moratorium on principal repayment as necessary, in eight equal semi-annual installments or as otherwise reasonable in line with financial projections received prior to the time of borrowing.

This bank is personally and favorably acquainted with several of the stockholders listed in your application to the Federal Communications Commission. As a condition of our intent to finance Multi-State Communications, Inc., we are depending on the continued participation in your venture of substantially all of the stockholders named in your application or substitute stockholders which are acceptable to the Chase Manhattan Bank.

The incumbent licensee, RKO General, Inc., intervenor here, had also applied for renewal of its license. Because RKO's and Multi-State's applications were mutually exclusive, they were set for a consolidated hearing at which several issues were designated to be aired. In its order designating issues the FCC stated that "Multi-State has established the availability of the $4,000,000 bank loan from the Chase Manhattan Bank." However, because the letter was silent on the question of collateral, one of the issues set for hearing was to determine whether Chase Manhattan would require collateral and whether Multi-State could comply with any such requirement.

Subsequently to the designation of issues and before the hearing, RKO was permitted to depose Jones, the author of the bank letter upon which Multi-State relied. On the basis of the contents of this deposition, the FCC Review Board added an issue:

To determine whether Multi-State Communications, Inc. will have available a $4,000,000 loan to finance its construction and first three months' operating expenses, and, in light thereof, whether Multi-State Communications, Inc. is financially qualified.

Because the presiding administrative law judge felt that the resolution of this issue was likely to be dispositive of Multi-State's application, he ordered the single issue to be heard before the other designated issues.[2] The hearing consisted mainly of Jones' testimony. On the basis of that testimony, the administrative law judge concluded that Multi-State had failed to carry its burden of proving that there was reasonable assurance that the bank loan would be available. Because the loan was an essential part of Multi-State's proposed financing, the ALJ held that the absence of the loan rendered

---

1. This is the standard enunciated by the Commission in *Orange Nine, Inc.*, 7 FCC 2d 788 (1967).

2. On appeal Multi-State asserts that the isolation of one issue for hearing and decision in advance of the others violated its statutory right to due process. Our resolution of the substantive issue makes it unnecessary for us to consider this and another procedural issue.

Multi-State financially disqualified. The findings and conclusions of the ALJ were subsequently affirmed by the FCC [3] and this appeal followed. After carefully scrutinizing Jones' testimony and the remainder of the evidence, we are of the opinion that the record evidence does not support the Commission's holding that Multi-State had failed to establish its financial qualifications to be a licensee. Consequently we reverse and remand for further proceedings in which the petitioner is not regarded as disqualified for financial reasons on the basis of the unavailability of the loan.

It is clear that the administrative law judge based his findings of lack of qualification on Jones' testimony. These findings were adopted by the Commission and formed the basis for the Commission's dismissal of Multi-State's application. Close scrutiny of that testimony reveals, however, that Jones did not state that the letter of intent was no longer operative in accordance with its terms. In fact, when asked if this was "a viable, subsisting letter which Chase Manhattan now regards as outstanding to Multi-State Communications," Jones responded, "Yes, sir." Jones did testify that the bank did not consider the letter a final and binding commitment in the sense that the bank was legally obligated to make the loan under any and all circumstances, but the Commission concedes that it does not require a legally binding commitment. A "reasonable assurance" that the loan will be available is all that the Commission requires.

The testimony of Jones also established that the letter did not represent an intention to make a loan based upon the continuation of the existence of facts as they existed at the time of the letter. The Commission construed this portion of the testimony as an indication that the letter was devoid of significance. However, this conclusion ignores Jones' testimony that the final decision on the loan could not be made in advance because the bank was precisely interested in the situation as it would exist at the time that Multi-State received the grant from the Commission to operate the station. Obviously, then, the bank's present lack of information about certain aspects of Multi-State's "credit-worthiness" does not undercut the import of the letter. When Multi-State's attorney asked Jones whether "[i]t would be an exercise in futility . . . to assemble materials of the sort indicated here, when such materials might be entirely passe and outdated many months in the future at such time as the condition in here is met, namely a grant to Multi-State," Jones responded: "We look at the situation as of a specific point in time, when we are putting up the money, yes, sir." Nor is it of crucial importance that further actions remained to be taken by the bank before the loan would be finalized. For if the need for additional information and further action could be said to render the bank letter worthless, then the Commission has in essence required a legally binding commitment at the same time that it professes to require something less.

The letter did not purport to be a legally binding loan commitment and Jones' testimony made this clear. Consequently, he testified that he did "not wish to start defining a loan proposition that would take place in the future that was not a commitment that would start taking on the aspects of a commitment." For this reason, he had been unwilling previously to alter the letter to include a provision for collateral. Yet he insisted that the bank stood upon the letter as written, that all of the conditions affecting the loan were contained within the four corners of the letter, and that "the time that we are looking forward to consider it [is] the time that these conditions are operative." By the terms of the letter, the conditions do not become operative until the grant of the license, at which time Multi-State is to request a formal lending commitment and meet "[a]ll reasonable and ordinary credit criteria" of the bank.

**3.** The Commission ordered the presiding judge to resume hearings on the issues relating to RKO's renewal application. These hearings have now been held and an initial decision granting the renewal application for RKO has been issued. The matter is now pending before the Commission.

We construe Jones' testimony as establishing that the bank had gone as far as it could under the circumstances in providing reasonable assurance that the loan would be made short of making a legally binding loan commitment. Jones expressed the bank's continuing willingness to lend up to $4 million, as stated in the first sentence of the letter. It is common business practice for transactions to proceed on just this type of letter.

The Chase bank letter was initially accepted by the Commission as indicating a present firm intention to make the loan. The administrative law judge's initial decision acknowledges this fact. It was only the erroneous belief that Jones' testimony somehow modified the meaning of the letter that led the judge and then the Commission to alter this belief. Indeed, no one contends that the letter on its face is inadequate by the Commission's standards to constitute proof of financial qualification. Because we hold that the Commission erred in construing the import of Jones' testimony, that letter should have been accepted by the Commission as satisfying its requirement of reasonable assurance that the loan would be available.

*Reversed and remanded.*

BAZELON, Circuit Judge, dissenting:

I would remand the case for consideration of a second financial commitment presented to the FCC by Multi-State in May, 1977. Although produced late in the proceeding, the second commitment was submitted before the Commission's order was final.[1] This court has recognized that such late presentations, when changing a "core" cir-

cumstance of the case and when supported by equitable considerations, can be accepted by the FCC without disturbing the value of administrative finality.[2] A second commitment would clearly affect the core circumstances of the case. Moreover, the issues raised by Multi-State's appeal were substantial, as the majority decision today demonstrates, and the difficulties of acquiring a second financial commitment were also substantial.[3] Accordingly, I cannot say that Multi-State's delay in obtaining the second commitment bars its consideration.

---

1. The FCC order was under judicial review at the time the Commission confronted the second financial commitment, RKO General, Inc., FCC 78–96 (Feb. 22, 1978). *See Greater Boston Television Corp. v. FCC,* 149 U.S.App.D.C. 322, 336, 463 F.2d 268, 282 (1971), *cert. denied sub nom. WHDH, Inc. v. FCC,* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972).

2. *Crosthwait v. FCC,* 189 U.S.App.D.C. 392, at 396–398, 584 F.2d 550, at 554–556, (1978); *Fleming v. FCC,* 96 U.S.App.D.C. 223, 225 F.2d 523 (1955); *Greater Boston Television Corp. v. FCC, supra,* at 337, 463 F.2d at 283.

3. Additional factors appear in the background of this case which may not, by themselves, mandate a remand, but which touch directly on the question of fairness to Multi-State. RKO General, the incumbent licensee, was a major customer of Chase Manhattan. This potential conflict of interest shadows the bank officer's failure to review the creditworthiness of Multi-State before issuing the letter, and his subsequent testimony on the matter.