**PONTCHARTRAIN BROADCASTING CO., INC. Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

No. 93–1291.

United States Court of Appeals, District of Columbia Circuit.

Feb. 11, 1994.

Harry C. Martin and Andrew S. Kersting, Washington, DC, were on the brief, for appellant.

Renee Licht, Acting Gen. Counsel, F.C.C., Daniel M. Armstrong, Associate Gen. Counsel, F.C.C. and David Silberman, Counsel, F.C.C., Washington, DC, were on the brief, for appellee.

Before: SILBERMAN, BUCKLEY, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Pontchartrain Broadcasting Company was one of several applicants for a permit to construct a television station in Hammond, Louisiana. PBC was the only remaining applicant, however, by the time the FCC determined that it had falsely certified in its application that it was financially qualified. The FCC nonetheless denied PBC's request belatedly to amend its application so as to meet the financial qualifications, and hence denied its application. PBC appeals on the ground that where there is no competing applicant FCC precedent requires the agency to allow the amendment. We affirm the agency's decision, as detailed below.

## I. BACKGROUND

After holding a hearing to compare the relative merits of PBC and a competing applicant, an Administrative Law Judge issued an Initial Decision awarding the construction permit to PBC. *See* 3 FCC Rcd. 6800 (1988). The Review Board remanded the case, however, for the ALJ to consider further whether PBC was in fact financially qualified and whether it had made a false certification in that regard; the ALJ then added as an issue the possible existence of an undisclosed real-party-in-interest.

Before the ALJ issued a decision in the proceeding on remand, the other party competing for the permit settled with PBC and withdrew his application. PBC then filed a petition to amend the financial portion of its application.

In a Supplemental Initial Decision, the ALJ resolved all three hearing issues against PBC and denied its petition to amend on the ground that "it [came] too late in the proceeding and would violate the long held principle that 'in the absence of a demonstration by the applicant that had reasonable assurance of financing at the time of certification, subsequent petitions to amend financial proposals [should be] disallowed.'" 6 FCC Rcd. 5025, 5032 (1991) (quoting *Aspen FM, Inc.,* 6 FCC Rcd. 1602, 1603 (1991)). The Review Board affirmed the ALJ's decision on the financial qualification and false certification grounds without reaching the real-party-in-interest question. 7 FCC Rcd. 1898 (1992).

Upon further review by the Commission, PBC conceded that it did not have adequate assurance of financing at the time that it filed its application, but contended that it had acted in good faith. Supporting PBC's application, the Mass Media Bureau argued, moreover, that under the Commission's decision in *Las Americas Communications, Inc.,* 5 FCC Rcd. 1634 (1990), the FCC was required to accept PBC's financial amendment because it was the only remaining applicant when it attempted to amend its application.

The Commission rejected the Bureau's argument, holding that "*Aspen* is controlling here, not *Las Americas,* notwithstanding the absence of competing applicants." 8 FCC Rcd. at 2257. Amending the application, the Commission observed, would not conclude the proceedings; the false certification and real-party-in-interest issues would remain to be resolved before the Commission could determine that granting the license to PBC would be in the public interest. Because a grant to PBC would still depend upon a favorable resolution of each of the other qualification issues, moreover, it was not even clear that allowing the amendment "would facilitate the institution of new broadcast service." Hence the Commission determined that amending the application likely "would entail more immediate administrative burden than rejection."

The Commission also affirmed the ALJ's determination that PBC had not properly certified its financial condition in its original application. Therefore, the Commission affirmed the Review Board's decisions both to reject PBC's amendment and to deny its unamended application.

## II. ANALYSIS

 Under the Commission's rules, once an application has been designated for hearing it may be amended "only upon a showing of good cause for late filing." 47 C.F.R. § 73.3522(b). In general, to make the good cause showing, the applicant must show that it acted with due diligence, that the amendment was not necessitated by a voluntary act of its own, and that the amendment will not otherwise disrupt the application process or prejudice any other party to it. *See Las Americas Communications, Inc.,* 5 FCC Rcd. at 1637; *Erwin O'Conner Broadcasting Co.,* 22 FCC2d 140, 143 (Rev.Bd.1970); *see also Royce International Broadcasting Co. v. Federal Communications Commission,* 820 F.2d 1332, 1335–38 (D.C.Cir.1987) (discussing the basic requirements of a good cause showing). In cases involving amendment of an applicant's initial financial certification, the Commission generally requires that the applicant also demonstrate that it had a reasonable assurance of financing at the time that it made its initial certification. *See Aspen FM,* 6 FCC Rcd. at 1603–04.

In *Las Americas* the Commission explained that the good cause test is "not rigid-

ly applied" but rather is interpreted in light of its "primary purpose . . . to prevent undue disruption of the Commission's processes." 5 FCC Rcd. at 1637. In that case, for example, the Commission allowed an amendment changing the applicant's proposed community of license pursuant to a settlement among the competing applicants, although such a change was "clearly not involuntary." "Where a post-designation amendment permits the immediate grant of a pending application . . . by curing a disqualifying defect in the only pending application, the Commission generally concludes that the equities favor granting the amendment." *Id.*

PBC argues that the Commission's decision to disallow its amendment in this case represents an unexplained departure from the standard set out in *Las Americas,* and that it must therefore be overturned as arbitrary and capricious. The FCC rejected the contention that *Las Americas* is controlling here, as we have seen, because "[a]cceptance of PBC's financial amendment . . . would not moot all of the outstanding issues that would have to be resolved before [it] could find that granting PBC's application would serve the public interest." 8 FCC Rcd. at 2257.

■■■ PBC is of course correct that an unexplained departure from Commission precedent would have to be overturned as arbitrary and capricious. *See Crosthwait v. FCC,* 584 F.2d 550, 556 (D.C.Cir.1978); *see also United Food & Commercial Workers Local 150–A v. NLRB,* 880 F.2d 1422, 1434–39 (D.C.Cir.1989). In this case, however, the Commission's order is not inconsistent with its prior practice.

As the Commission noted in its order, permitting PBC to amend its application would not enable the FCC to grant a construction permit to PBC without further proceedings. Therefore, allowing PBC to amend its application would not avoid an administrative burden and would not necessarily advance the time at which new television service is established in Hammond. In short, the initial criterion for granting an exemption under *Las Americas* to the general rule against late amendments was not satisfied in this case. On that ground alone, the Commission's refusal to grant PBC leave to amend was a reasonable application of its precedents.

In addition, the Commission in its order criticized PBC for its "deplorable dilatoriness [in] failing to secure requisite assurance of financing in the first place [and] then stubbornly maintaining when challenged that its financial proposal was reliable." 8 FCC Rcd. at 2257. The Commission went on to note that rewarding such behavior would be directly contrary to its decision in *Aspen FM,* holding that an applicant that would amend its financial certification must show that it had adequate assurance of financing when it first so certified. If applicants could safely "certify their financial qualifications without any basis or justification," then FCC hearings could be seriously disrupted or delayed by the need to evaluate amended financial proposals. *Aspen FM,* 6 FCC Rcd. at 1603.

Even if the factual predicate for an exception under *Las Americas* were present in this case, therefore, the Commission would still rightly be concerned about the wisdom of granting an application that was not well-founded when first filed. That is no doubt why in *Las Americas* itself the Commission stated only that when the sole remaining applicant seeks to amend its application "*generally . : . the equities favor granting the amendment.*" The clear implication is that there may be some cases involving a sole applicant to which *Las Americas* will not apply. Consequently, if PBC's "deplorable dilatoriness" in securing financing in fact played any part in the FCC's denying it an exception under *Las Americas*—which is not entirely clear from the FCC's decision—we would still affirm today, for that is a valid consideration under the equitable aspect of that decision. In sum, the Commission's decision to bar PBC from amending its financial proposals is both rational and consistent with its decisions in *Las Americas* and *Aspen FM.*

### III. CONCLUSION

PBC attacks the Commission's decision on a number of other grounds, none of which merits discussion in a published opinion. For the reasons stated above, we hold that

the FCC's rejection of PBC's motion to amend its license application was both reasonable and within the Commission's discretion. The decision of the Commission denying PBC's application is therefore

*Affirmed.*