**MISSION BROADCASTING CORPORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**Coast TV, Intervenor.**

**Nos. 95–1548, 96–1146.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 18, 1996.

Decided May 23, 1997

Lewis J. Paper, Washington, DC, argued the cause, for appellant Mission Broadcasting Corporation, with whom Robert A. Aldrich was on the briefs.

Michael J. Couzens, Oakland, CA, argued the cause and filed the briefs, for appellant Solar Television, Inc. Gene A. Bechtel entered an appearance.

David Silberman, Counsel, Federal Communications Commission, Washington, DC, argued the cause, for appellee. William E. Kennard, General Counsel, Daniel M. Armstrong, Associate General Counsel, and Roberta L. Cook, Counsel, were on the brief.

Donald E. Ward, Washington, DC, was on the brief, for intervenor Coast TV.

Before WALD, GINSBURG, and TATEL, Circuit Judges.

GINSBURG, Circuit Judge:

Mission Broadcasting Corporation and Solar Television, Inc. each challenge orders of the Federal Communications Commission denying to it and granting to Coast TV a permit to construct and operate a new television station in Santa Barbara, California. In each case the agency held that the appellant had failed to demonstrate that it had the reasonable assurance of financing needed to be awarded a permit. Neither appellant has shown that the Commission's decision concerning its financial showing was arbitrary and capricious or unsupported by substantial evidence. Because the appellants' challenges to the application filed by Coast TV also lack merit, we affirm the orders of the FCC.

## I. Background

This proceeding began in 1984 when six companies applied for an FCC permit to

operate a television station in Santa Barbara. Twelve years later only Mission, Solar, and Coast remained. After concluding that Solar and Mission were not financially qualified, the FCC gave the permit to Coast.

## A. Regulatory Background

Section 308(b) of the Communications Act provides that "[a]ll applications for station licenses ... shall set forth such facts as the Commission by regulation may prescribe as to the ... financial ... qualifications of the applicant to operate the station." 47 U.S.C. § 308(b). Until 1981 the FCC required an applicant to submit detailed documentation of its financial qualifications. That year, in a rare display of trust that it would later come to regret, the Commission switched to requiring the applicant simply to check "yes" or "no" next to the following statements on FCC Form 301:

1. The applicant certifies that sufficient net liquid assets are on hand or that sufficient funds are available from committed sources to construct and operate the requested facilities for three months without revenue.

2. The applicant certifies that: (a) it has a reasonable assurance of a present firm intention for each agreement to furnish capital or purchase capital stock by parties to the application, each loan by banks, financial institutions or others, and each purchase of equipment on credit; (b) it can and will meet all contractual requirements as to collateral, guarantees, and capital investment; (c) it has determined that a reasonable assurance exists that all such sources (*excluding banks, financial institutions, and equipment manufacturers*) have sufficient net liquid assets to meet these commitments. (Emphasis in original.)

Coast, Mission, and Solar all checked "yes" as to both statements. The regulations applicable to Form 301 advised applicants that "documentation supporting the attestation of financial qualifications ... must be available to the Commission upon request." *Revision of Form 301*, 50 Rad. Reg.2d (P&F) 381, 388.

## B. Factual Background

Before Mission filed its application with the FCC in 1984, its president Floyd D. Little met briefly with two officers of the Crocker National Bank in order to secure a tentative loan agreement. The bank was familiar with Little because it had done business with his automobile dealership. Although no participant in the meeting, when questioned some eight years later, could remember any details, the record shows that shortly thereafter the bank sent a letter to Mission stating that it would be willing to lend Mission money for the television venture. Mission's general counsel found the bank's first letter too vague, whereupon the bank sent the following substitute letter:

The Crocker Bank could provide $2,000,-000 in loans to Mission Broadcasting Corporation for the purpose of constructing a television station in Santa Barbara, California.

Subject to the foregoing, our willingness to lend this amount would be contingent upon the following and not limited to:

1. The Corporation successfully obtains approval from the Federal Communications Commission to construct and operate such television station in the Santa Barbara area.

2. (a) All reasonable, ordinary credit criteria of the Bank are met by the Corporation; (b) the Corporation receives a construction permit; (c) the Corporation requests a lending commitment from the Bank; (d) the Corporation executes all customary documentation normally required by the Bank for credits of this type, including opinions of attorneys and accountants, and guarantors and collateral documents acceptable to the bank.

As for Solar, its efforts to assure itself of financing were limited to a meeting between the company's principals and its outside attorney at which they discussed the amount of money needed to construct and operate the station. The lawyer told the Solar principals that another client of his, one Arnold Applebaum, might be willing to finance the venture. None of Solar's principals actually met with Applebaum, nor did they either seek or obtain any information about Applebaum's abil-

ity to finance the station. Applebaum did not enter into any agreement with Solar, and the Solar principals did not know exactly how Applebaum might help finance their station.

## C. Procedural Background

Under the procedures of the Commission then in place, the Commission held a comparative hearing before an Administrative Law Judge in order to determine which of the competing proposals for the television station would best serve the public interest. In pre-hearing motions the ALJ considered and rejected Coast's challenge to Mission's financial qualifications. The ALJ also dismissed Coast's own application for failure to publish a notice of the proposed hearing. The Review Board reversed the latter decision and ordered the ALJ to hold a new hearing, in advance of which Coast would publish a proper notice. At the new hearing, however, Coast could simply enter the record of the old hearing. 102 F.C.C.2d 718 (1985). This would allow Coast to cure its error by providing public notice of its application without forcing the parties to duplicate the testimony or pleadings of the first hearing.

After the second hearing the ALJ concluded that, based solely upon its quantitative integration credits—in plain English, the degree of overlap between ownership and management of the proposed station—Coast's application would best serve the public interest. 1 F.C.C.R. 34 (1986).\* On appeal, the Review Board held that Mission was the comparative winner, 2 F.C.C.R. 2982 (1987), but the Commission in turn disagreed with both the ALJ and the Review Board with respect to the integration of ownership and management.4 F.C.C.R. 1786 (1989). Upon remand, the Review Board conditionally declared Solar the comparative winner, subject to the ALJ's determinations whether Solar had falsely certified its financial qualifications and whether it was in fact financially qualified. 5 F.C.C.R. 6720 (1990). In order to "preclude the possibility that similarly situated applicants could be afforded disparate treatment," the Review Board directed the

ALJ to consider whether he should also review Mission's financial qualifications. *Id.* at 6722.

The ALJ decided that Solar was not financially qualified and denied Solar's petition to amend its financial certification by introducing a proffered commitment letter from a bank.7 F.C.C.R. 1375 (1992). At the same time, the ALJ declined to look into Mission's financial certifications. The Review Board reversed the latter decision, 7 F.C.C.R. 6244 (1992), and after a further hearing, the ALJ decided that Mission was not financially qualified either. 9 F.C.C.R. 581 (1994). The Review Board affirmed the ALJ's decisions denying the applications of Mission and Solar and then granted the license to Coast, the only party left standing. 10 F.C.C.R. 2852 (1995). The Commission denied review of the Board's decision, 10 F.C.C.R. 10623 (1995), and denied Solar's petitions for reconsideration and to reopen the record in order to consider additional issues. 11 F.C.C.R. 4074 (1996). Mission and Solar appealed to this court.

## II. Analysis

█ Each appellant claims that the Commission erred in disqualifying it for failing to show that it had a reasonable assurance of financial backing at the time it checked the "yes" box on FCC Form 301. Solar acknowledges that it did not make a showing of reasonable assurance adequate under the Commission's standard but argues that that standard was excessively rigid and that Solar should have been allowed to amend its certification. Mission argues that the facts it presented to the Commission were sufficient under the agency's established standard for showing reasonable assurance. Both companies also contend that Coast's application should have been dismissed in 1985 for failure to comply with the public notice provision of the Communications Act. We may set aside the FCC's decision whether to dismiss an application only if that decision was "arbitrary, capricious, an abuse of discretion, or

---

\* This court later held that the integration criterion was unlawful, *Bechtel v. FCC,* 10 F.3d 875 (1993).

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## A. Solar

■ Solar argues that the Commission's decision must be reversed because the agency retroactively applied (1) a more rigorous standard of financial qualification to Solar's certification and, when Solar then petitioned to amend its certification, (2) a more stringent amendment policy. *See CHM Broadcasting v. FCC*, 24 F.3d 1453, 1457 (D.C.Cir. 1994) (reversible error when agency penalizes applicant based upon standard of which agency failed to provide notice). Solar never raised the first issue before the Commission, as required by § 405(a) of the Communications Act.** By failing to object that Solar failed to preserve the issue, however, the Commission has waived the point. *See Petroleum Communications, Inc. v. FCC*, 22 F.3d 1164, 1170 (D.C.Cir.1994) (§ 405(a) is exhaustion requirement rather than jurisdictional prerequisite). Accordingly, we address both of Solar's arguments on appeal.

### 1. Standard of financial qualification

■ Although the Commission stated that Solar's application "is governed by the Commission's 1981 financial certification standards," 10 F.C.C.R. at 2853, Solar argues that the Commission actually applied the more rigorous standard of financial qualification developed in FCC cases that post-date Solar's 1984 application. It is true that the Commission has at times murmured and mumbled rather than enunciate clearly what Form 301 requires an applicant for a broadcast permit to show in order to certify its financial qualifications. *See Northampton Media Associates v. FCC*, 941 F.2d 1214 (D.C.Cir.1991) (noting inconsistency). It is also true that the Commission's decision cites cases that post-date Solar's certification. Nevertheless, Solar has not shown that the Commission failed to give it proper notice of

what Form 301 requires. Simply put, Solar's efforts to secure financing were so woefully inadequate that they must be deemed insufficient under any interpretation of FCC Form 301.

First, Solar made no serious effort to determine how much money it would need. An applicant cannot certify that "sufficient net liquid assets are on hand or available from committed sources to construct and operate the requested facilities for three months without revenue," as FCC Form 301 requires, if it has not determined how much money such an operation would require. Even worse than having no idea how much money it needed, Solar had no specific idea how it would get the money; no Solar principal ever met with Applebaum, its only purported source of funding. According to their own testimony, Solar's stockholders had conflicting ideas regarding how Applebaum might finance their venture—as a lender, guarantor, or by using his company as a source of equipment financing—and Solar never called Applebaum as a witness. For all the record shows, Applebaum may be Solar's name for Santa Claus ... or Godot.

In addition, Solar took no steps to assure itself that Applebaum could have financed the venture. Yet FCC Form 301 clearly states that when an applicant proposes to rely upon an individual in order to certify its financial qualifications the applicant must assure the FCC that "it has determined that a reasonable assurance exists" that the individual has "sufficient net liquid assets to meet these commitments." *See CHM Broadcasting*, 24 F.3d at 1457 (applicants must have "firsthand knowledge of the sufficiency of the assets upon which their personal certification is based"). Moreover, assuming that he has a deep enough pocket, Applebaum made no "commitments." In short, Solar's stress upon inconsistencies in the Commission's interpretation of Form 301 is but a red herring; Solar is unable to point to any Commis-

** In its Application [to the Commission] for Review of the Review Board Decision, Solar raised the following objections: The Board's conclusion that Solar's initial financial certification was inadequate ignored substantial evidence in the record; the Board erred in looking at the financial qualifications of the applicants at the time they filed their applications rather than at the time the Board made its decision; the Board erred in holding that it did not retroactively apply a more stringent amendment policy; and the Board had no rational basis for awarding the broadcast permit to Coast rather than to Solar or to Mission.

sion decision, before or after 1984, that is inconsistent with the facial requirements of Form 301 discussed above.

### 2. Amendment policy

■ Solar's second argument is that the Commission erred in not allowing it to amend its certification in 1990 by introducing a newly-obtained bank letter as evidence of its financial qualification. Under the Commission's rules, once an application has been designated for hearing it may be amended "only upon a showing of good cause for late filing." 47 C.F.R. § 73.3522(b). Since adopting its financial certification procedure in 1981 the FCC has generally required that an applicant "demonstrate that it had a reasonable assurance of financing at the time that it made its initial certification" before it will be permitted to amend its application. *Pontchartrain Broadcasting Co. v. FCC*, 15 F.3d 183, 184 (D.C.Cir.1994).

Solar argues that this policy is inconsistent with the Commission's historical policy of liberally allowing amendments for "good cause." The Commission quite understandably modified its liberal amendment policy, however, in 1981 when it eliminated the requirement that each applicant submit detailed financial documents; the agency was concerned that an applicant would certify to its financial qualifications first and secure its financing only later. *See id.* at 185 (Commission's amendment policy directed at preventing applicant from certifying financial qualifications without any basis or justification). Solar itself acknowledged in its Petition for Leave to Amend that "where an applicant's certification has no objective basis *ab initio,* the applicant may not rely on a later financial commitment to support its earlier certification." For that very reason, the Commission reasonably denied Solar's request to amend its certification.

### B. Mission

■ Mission first argues that the Commission was barred from considering its financial qualifications in 1992 because no party had excepted to the ALJ's determination in 1985 that Mission was financially qualified. Mission relies upon an agency rule that

"[a]ny objection not saved by exception filed pursuant to this section is waived." 47 C.F.R. § 1.277(a). As the Commission points out, however, that rule is a limitation upon parties, not upon the agency itself, which is authorized but not required (in § 1.279) "to limit its review of those issues raised in exceptions." *See Marlin Broadcasting of Central Florida, Inc. v. FCC,* 952 F.2d 507, 514 (D.C.Cir.1992) (although party waives objection not raised in exceptions, Commission may raise any objection *sua sponte*). Nor is it the case, as Mission alleges, that by raising the issue of Mission's financial qualifications the Commission was reconsidering a question that it had previously decided; only the ALJ had ruled in Mission's favor, and the Commission's 1989 remand specifically instructed the Review Board to consider "any other decisionally significant matters." 4 F.C.C.R. at 1789.

■ As a fallback, Mission contends that it was arbitrary and capricious for the Commission to raise the issue of its financial qualifications so many years after the ALJ had first determined that it was qualified. Mission asserts that it was prejudiced in that Mr. Little and the bank officers were by then unable to remember the details of their meeting. Mission would not have been prejudiced by the passage of time if it had relied more upon written documentation in order to certify its reasonable assurance of financial backing. Mission could at any time have asked the participants in the meeting to memorialize their accounts of the meeting, and presumably would have done so if the parties had reached any agreement beyond what is reflected in the bank's second letter to Mission. In short, although an applicant may rely upon oral testimony to demonstrate its financial qualifications, it does so at its peril.

■ In determining that Mission had failed to show that it was financially qualified, the Commission applied the test set out in *Scioto Broadcasters, L.P.,* 5 F.C.C.R. 5158, 5160 (Rev. Bd.1990):

> [I]n order for the Board to determine that an applicant has "reasonable assurance" of "committed sources of funds" from a lending institution, we will review the following

factors: Whether (1) the bank has a long and established relationship with the borrower sufficient to infer that the lender is thoroughly familiar with the borrower's assets, credit history, current business plan, and similar data, or (2) the prospective borrower has provided the bank with such data, and the bank is sufficiently satisfied with the financial information (e.g., collateral guarantees) that, *ceteris paribus,* a loan in the stated amount would be forthcoming and that the borrower is fully familiar with, and accepts the terms and conditions of the proposed loan (e.g., payment period, interest rate, collateral requirements, and other basic terms).

The Commission concluded that Mission could not show that it had a reasonable assurance of financial backing either through the letter it procured from the Crocker National Bank or through testimony concerning Little's meeting with officers of that bank. Crocker was familiar with Little, but the bank officers knew almost nothing about Mission, its other principals, or its plans. Mission argues that the Commission's decision conflicts with *Multi–State Communications, Inc. v. FCC,* 590 F.2d 1117 (D.C.Cir. 1978), in which we reversed the Commission's decision that an applicant for a broadcast permit had not demonstrated a reasonable assurance of its financial qualifications. In that case, however, the bank letter upon which the applicant relied had stressed that the bank was "personally and favorably acquainted with several of the [applicant's] stockholders" and that the bank expressly conditioned its intent to finance the applicant's venture upon the continuing participation of the stockholders named in the application. *Id.* at 1118. As the FCC points out, Crocker's letter to Mission evinces no such relationship between that bank and any of Mission's principals.

The Commission also notes that, unlike the letter at issue in *Multi–State,* neither the discussions between Little and the bank officers nor the letter from the bank addressed such basic provisions as the interest rate or term for the proposed loan. Mission argues that the FCC should not attach any significance to the specification of loan terms because the terms of any actual loan would ultimately be based upon market conditions when the loan was made. Surely, however, the FCC did not err in thinking that even the terms reached tentatively between a bank and an applicant for a broadcast permit would reflect the bank's knowledge of and confidence in the shareholders and their business plan. For this reason, the Commission reasonably considers it important to see evidence that the applicant has come to terms with a bank (or other source of financing), albeit subject to a change in market conditions. The noncommittal and vague nature of Crocker's letter and the inability of Mission's witnesses to recall any more specific discussion with the bank provide substantial evidence in support of the Commission's determination that Mission failed to show that it was financially qualified to operate a television station.

 Finally, Mission argues that even if its certification did not meet the standard announced in 1990 in *Scioto Broadcasting,* the Commission's decision should still be vacated because that was a new standard that should not have been applied retroactively to Mission's 1984 application. Specifically, Mission argues that in cases decided prior to 1984 the Commission had accepted financial commitments that lacked any specific terms. The Commission correctly points out, however, that Mission did not make this argument before the agency and therefore cannot raise it now. *See* 47 U.S.C. § 405(a). In a footnote to its Reply Brief, Mission would confess and avoid its waiver on the ground that its competitor Solar "explicitly raised the question of the Commission's changed standards."

 The question then becomes whether Solar raised before the Commission the "identical issue" that Mission now wishes to present to the court. *Natural Resources Defense Council v. EPA,* 824 F.2d 1146, 1151 (D.C.Cir.1987). As we have seen (at page 260 n.**) Solar argued before the Commission that the agency had retroactively applied to it a more stringent standard for determining whether an applicant may amend its financial certification. Solar's argument gave the Commission no occasion to

pass upon Mission's quite different contention that the FCC required more detail for a bank letter to constitute a reasonable assurance of financing in 1992 than it had required when Mission filed its application in 1984. Therefore Mission may not pursue that argument on appeal.

## C. Coast

Both Mission and Solar challenge the FCC's 1985 decision allowing Coast to publish notice of a new hearing and to enter the record of the previous hearing at that new hearing. In addition Solar appeals the FCC's rejection of its motion to enlarge issues in order to inquire into the feasibility of Coast's proposed transmitter site.

### 1. Failure to give local notice

When an application for a broadcast station is formally designated for a hearing, the applicant must give at least ten days advance notice of that hearing in the principal area to be served by the station. 47 U.S.C. § 311(a)(2). Coast inadvertently failed to give such public notice and the day before the scheduled hearing Mission moved to dismiss Coast's application for that reason. The hearing began as scheduled. Seven days into the hearing Coast responded to Mission's motion by asking the ALJ to set a new date for the hearing, notice of which it would duly publish and at which hearing Coast would enter into evidence the record that had been compiled at the first hearing; Coast would also comply with whatever conditions the ALJ deemed necessary in order to avoid prejudice to any interested party.

The Commission had faced a similar situation in *Martin R. Karig,* 45 F.C.C. 625 (1963), and there approved the same remedy for an applicant's failure to publish notice of the hearing. Despite their attempts to distinguish *Karig* from the present case, neither Mission nor Solar has cast any doubt upon the reasonableness of the Commission's response to Coast's inadvertent and minor procedural oversight. The Commission's remedy violated neither the letter nor the spirit of the statutory requirement of notice. Other parties had given public notice of the first hearing, and by requiring Coast to provide an additional notice before the second hearing the Commission ensured that any party that may have had an objection to Coast's proposal in particular was given a chance to make its view known.

Mission and Solar also argue that the Review Board was required, under 47 C.F.R. § 73.3594(h), to make a finding of special circumstances before allowing Coast to remedy its error by publishing notice of a second hearing. That regulation applies, however, only to an applicant that seeks a variance from the notice requirement. Coast did not seek such a variance; rather, it sought a second hearing before which it could comply with the notice requirement of the Act. Although Mission asserts that the Commission relied upon § 73.3594(h) in its decision nonetheless and that the Commission's present explanation is a post hoc rationalization, the record does not support that charge. The Commission noted that it had generally been lenient in granting waivers of § 73.3594, 102 F.C.C.2d at 720, but it so noted only as persuasive support for its decision to hold a new hearing in order to enable Coast to comply with the notice requirement. Thus the Commission's present argument is not a post hoc explanation of its decision; it is an argument raised in order to deflect Solar's appellate attack upon its decision.

### 2. Denial of Solar's motion to reopen the record

Finally, Solar contends that the Commission erred in denying its petition to reopen the record in order to consider whether Coast's proposal for its antenna tower and transmitter was adequate. The Commission will not reopen the record upon an applicant's belated request unless there is a substantial likelihood that if given the chance the petitioner could demonstrate a fatal flaw in a competitor's proposal. *See Evergreen Broadcasting Co.,* 7 F.C.C.R. 6601, 6602 (1992). The Commission concluded that Solar had proffered nothing more damning than the need for Coast to make some technical modifications to its antenna and transmitter proposal. 11 F.C.C.R. at 4075. On appeal Solar does not attack the FCC's reasoning or

the standard that it applied. Rather it complains that if the Commission is to be lenient in dealing with possible engineering deficiencies in Coast's proposal, then it should be equally lenient in dealing with the financial deficiencies in Solar's proposal. Because Solar's premise is flawed—it has not shown that the Commission was "lenient" with Coast—we reject its argument at the outset.

### III. Conclusion

For the foregoing reasons the FCC orders denying a broadcast permit to Mission and to Solar and granting the permit to Coast TV are

*Affirmed.*