**Lorenzo JELKS, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Gonzales Broadcasting, Inc., et al., Intervenors.**

No. 97–1544.

United States Court of Appeals, District of Columbia Circuit.

Argued May 18, 1998.

Decided June 16, 1998.

Lewis J. Paper, argued the cause and filed the briefs, for appellant.

Roberta L. Cook, Counsel, Federal Communications Commission, argued the cause, for appellee, with whom Christopher J. Wright, General Counsel, and Daniel M. Armstrong, Associate General Counsel, were on the brief.

James J. Freeman, Dennis F. Begley, Margaret L. Tobey and Curtis T. White were on the brief, for intervenors Gonzales Broadcasting, Inc., et al. Matthew H. McCormick entered an appearance.

Before: SENTELLE, RANDOLPH and GARLAND, Circuit Judges.

PER CURIAM:

Lorenzo Jelks appeals from a decision by the Federal Communications Commission (FCC) denying his application for a construction permit to build a new FM radio station in Mableton, Georgia. Because Jelks never amended his application to indicate that he had the necessary financial qualifications, and because such an amendment was necessary before Jelks could submit evidence of his qualifications at a hearing, we affirm the decision of the Commission.

Jelks filed his application for a construction permit on July 10, 1987. At the time, the application form required each applicant to check either a "yes" or "no" box in response to the following:

> The applicant certifies that sufficient net liquid assets are on hand or that sufficient funds are available from committed sources to construct and operate the requested facilities for three months without revenue.

Jelks checked the "no" box, but added: "Applicant will file an amendment relating to his financial qualifications in the near future." Jelks never filed the promised amendment.

The FCC issued a hearing designation order [1] to consider the applications of Jelks and numerous competitors, and subsequently added a financial qualifications issue against Jelks. Jelks made no effort to amend his application or to show good cause for the late filing of an amendment. Instead, at the March 7, 1989 evidentiary hearing, Jelks proffered an exhibit to show that he was financially qualified. The administrative law judge (ALJ) rejected the exhibit because it varied from the "no" certification in Jelks' application and because Jelks had failed to amend the application. Thirteen months later, noting that Jelks still had not filed an amendment, the ALJ ruled against Jelks on the financial qualifications issue and denied his application. See Mableton Broad. Co., 5 F.C.C. Rcd 2474, 2496 (1990).

Jelks filed exceptions with the FCC's Review Board, which affirmed the denial of Jelks' application on the ground that he had neither amended his application nor shown good cause for filing an amendment late. See Mableton Broad. Co., 8 F.C.C. Rcd 7609, 7616 (1993). Jelks then appealed to the FCC. The Commission denied the petition for review, holding it was FCC policy at the time of Jelks' application that, in order to make a showing at a hearing contradicting a representation in an application, an amendment supported by good cause was required. See Gonzales Broad., Inc., 12 F.C.C. Rcd 12,253, 12,259 (1997). At the same time, the Commission approved a settlement among the remaining applicants and, pursuant thereto, granted the application of intervenor Gonzales Broadcasting, Inc. See id. at 12,260.

FCC rules provide that an application may be amended as of right before the application is designated for hearing, see 47 C.F.R. § 73.3522(a), and, in comparative broadcasting cases, within thirty days after the application has been designated for hearing if the amendment relates to issues first raised in the designation order, see 47 C.F.R. § 73.3522(b)(2). Thereafter, the agency will consider amendments "only upon a showing of good cause for late filing." 47 C.F.R. § 73.3522(b)(1).[2] In an apparent effort to

---

**1.** The hearing designation order was issued pursuant to 47 U.S.C. § 309(e), which provides that the Commission "shall formally designate [an] application 'for hearing" if "a substantial and material question of fact is presented" or if the Commission is unable to make a finding under § 309(a) "that public interest, convenience, and necessity would be served by the granting" of the application.

**2.** In Erwin O'Conner, the FCC Review Board identified the following factors as relevant to the good cause determination:

> that [the party seeking to amend] acted with due diligence; that the proposed amendment was not required by the voluntary act of the applicant; that no modification or addition of issues or parties would be necessitated; that the proposed amendment would not disrupt the orderly conduct of the hearing or necessitate additional hearing; that the other parties will not be unfairly prejudiced; and that the applicant will not gain a competitive advantage.

22 F.C.C.2d 140, 143 (1970); see also Royce Int'l Broadcasting Co. v. FCC, 820 F.2d 1332, 1335 (D.C.Cir.1987) (citing Erwin O'Conner and dis-

avoid the consequences of the "good cause" requirement, Jelks contends that his financial qualifications exhibit should have been allowed into evidence without amendment of his application. Citing cases from 1981 and before, he asserts that Commission policy permitted applicants to tender financial qualifications evidence at variance with their applications without submitting an amendment supported by good cause. Moreover, he contends, even if there were a change in that policy prior to his hearing, the FCC provided insufficient notice of that change.

■ Jelks is correct in noting that the FCC has not always been strict in requiring good cause to amend, or amendment at all, in order to introduce evidence at variance with an application. See Aspen FM, Inc., 6 F.C.C. Rcd 1602, 1603 (1991) (discussing pre–1981 policy); Neil N. Levitt, 33 F.C.C. 720, 722 (Rev. Bd.1962). The FCC has conceded as much. See Gonzales Broad., 12 F.C.C. Rcd at 12,259. Jelks is also correct that the Commission must provide notice of changes in application requirements, particularly where the sanction for failure to meet those requirements is dismissal without reaching the merits. See Salzer v. FCC, 778 F.2d 869, 875 (D.C.Cir.1985); see also CHM Broad. Ltd. Partnership v. FCC, 24 F.3d 1453, 1457–58 (D.C.Cir.1994). Jelks is wrong, however, in contending that the requirements at issue here had not changed by the time of his evidentiary hearing and that the agency had not provided adequate notice of that change.

Prior to 1981, the FCC required broadcast applicants to submit detailed documentation demonstrating their financial qualifications. In 1981, the Commission substituted a revised application form that, among other things, required only a simple "yes" or "no" certification to the financial qualifications statement set out above. See Mission Broadcasting Corp. v. FCC, 113 F.3d 254, 258 (D.C.Cir.1997); Revision of Application for Construction Permit for Commercial Broadcast Station, 50 Rad. Reg.2d (P & F) 381, 382, 397 (1981). Once it adopted this certification policy, the FCC also "generally required that an applicant 'demonstrate that it had a reasonable assurance of financing at

cussing same factors in television licensing con-

the time that it made its initial certification' before it [would] be permitted to amend its application." Mission Broadcasting, 113 F.3d at 261 (quoting Pontchartrain Broadcasting Co. v. FCC, 15 F.3d 183, 184 (D.C.Cir.1994)). As we explained in Mission Broadcasting, the Commission "modified its liberal amendment policy ... when it eliminated the requirement that each applicant submit detailed financial documents; the agency was concerned that an applicant would certify to its financial qualifications first and secure its financing only later." Id. (citing Pontchartrain Broadcasting, 15 F.3d at 185); see also Aspen FM, 6 F.C.C. Rcd at 1603.

The Commission's new policy was reflected in its 1985 decision in Chudy Broadcasting Corp., 58 Rad. Reg.2d (P & F) 133 (1985). There, the ALJ refused to permit a post-designation amendment, unsupported by good cause, of a broadcast application. On review, the Commission rejected the applicant's contention that it should have been permitted to continue to prosecute its application without an amendment. And since without the amendment the applicant was left with a proposal that was not financially viable, the FCC upheld the dismissal of the application. See id. at 135. The Commission explained:

> We have recently undertaken to place greater emphasis on providing service to the public in the most efficient, expeditious manner possible. Temporizing with flawed proposals has in the past disserved the public interest by inordinately delaying the initiation of new service.

Id. at 134–35 n. 7. Cf. Hillebrand Broad., Inc., 1 F.C.C. Rcd 419, 419 (1986) (recognizing that procedural deficiencies in applications did not always result in dismissal in the past, and that "applicants' temporizing activities have been indulged on occasion," but emphasizing that "times have changed and so has Commission policy"). See also Edwin A. Bernstein, 4 F.C.C. Rcd 8420 (Rev. Bd.1989), rev. denied, 5 F.C.C. Rcd 2843 (1990), aff'd sub nom. Lefebvre v. FCC, 926 F.2d 1215 (D.C.Cir.1991) (table).

text).

As against these developments, Jelks principally cites two opinions which, he claims, justified his purported ignorance of the need to amend his application—a claim belied by his representation on that application that he would "file an amendment relating to his financial qualifications in the near future." The first is the FCC's 1983 decision in *South Florida Broadcasting Co.*, which held that a pre–1981 applicant that had failed to demonstrate its financial qualifications on the old form could not avoid a hearing simply by amending its application to add the post–1981 "yes" certification. *See* 94 F.C.C.2d 452, 455 (1983); *see also Q Prime Inc.*, FCC 91M–629 (ALJ Feb. 15, 1991). But the FCC's decision that an amendment is not *sufficient* to resolve a financial qualifications issue hardly establishes that it is not a *necessary* precondition to so doing.

Jelks also cites a 1989 decision by the FCC's Video Services Division, holding that an application was not necessarily "unacceptable for filing" simply because the applicant had marked the "no" box regarding financial certification. *See Citylight Communications, Inc.*, 4 F.C.C. Rcd 1676, 1676–77 (1989). Although the Division did state in dictum that "[t]he remedy for failure to certify is not dismissal, but amendment or, failing that, specification of a financial qualifications issue against the relevant applicant," *id.* at 1677, the only question at issue was whether the application could be filed. Hence, *Citylight* simply did not address the question of how an applicant who failed to amend could introduce evidence at a hearing to meet a financial issue designated against it. Of course, even if *Citylight* were inconsistent with the policy the FCC set for post-designation amendments in *Chudy*, Jelks could hardly take any comfort from it. As counsel for Jelks conceded at oral argument, a subordinate body like the Division cannot alter a policy set by the Commission itself. *See Amor Family Broadcasting Group v. FCC*, 918 F.2d 960, 962 (D.C.Cir.1990).

■ We conclude that the FCC provided Jelks with adequate notice that if he wanted to submit an exhibit at variance with his application, he would have to amend that application and show good cause for late filing. Because he did not do so, the ALJ did not err in rejecting the exhibit, and neither the ALJ nor the Commission erred in consequently denying Jelks' application. We have considered Jelks' other arguments and find that none warrants reversal of the Commission's decision or further discussion here.